IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

STEPHEN LESSEY and GINGER LESSEY,   )
        )
      Plaintiffs,   )   TC-MD 210265G
        )
   v.   )
        )
DEPARTMENT OF REVENUE,   )
State of Oregon,   )
        )
      Defendant.   )   **DECISION**

Plaintiffs challenge Defendant's adjustments to the cost of goods sold (COGS) and expense deduction claimed on their 2016 return for their marijuana-growing business. Plaintiff Stephen Lessey appeared and testified for Plaintiffs; Defendant was represented by its auditor, William Swanson, and did not call any witnesses. Plaintiffs' Exhibits 1 to 9 and Defendant's Exhibits A to L were admitted.

## I. FACTUAL OVERVIEW

In 2016, Plaintiffs began growing marijuana for profit in a building outside Salem they called Oak Ponds Farm ("the Farm"). The Farm was a three-room house on five acres with an RV parked in front. Plaintiffs configured the Farm's rooms and installed additional air conditioning to control the temperature, lighting cycle, and water pH levels of the marijuana cultivars at every stage of development. Mr. Lessey testified that the RV's purpose was to provide a bathroom and that it was not used as living quarters.

Plaintiffs' marijuana business was primarily conducted by Mrs. Lessey, with Mr. Lessey and Plaintiffs' son occasionally assisting. Plaintiffs' main source of income was Mr. Lessey's job with an out-of-state pharmaceutical company, which required him to travel frequently.

/ / /

Plaintiffs and their son were registered with the Oregon Health Authority as medical marijuana growers during 2016; Plaintiffs obtained a nonmedical marijuana license the following year.

On their 2016 return, Plaintiffs reported $19,500 in gross receipts, no beginning or ending inventory, and $57,654 in cost of goods sold (COGS), $31,187 of which was allowed by Defendant in its Written Objection Determination. (Exs C at 2–3; J at 3.) Most of the expenses now in dispute were originally claimed by Plaintiffs within the COGS: expenses for air conditioning units, cellular telephone service, internet service, office rental, and meals and entertainment. Besides the COGS, Plaintiffs claimed a $9,596 car-and-truck expense deduction on their Schedule C. (Ex C at 2.) Evidence pertinent to the disputed expenses and adjustments will be described where relevant in the analysis below.

Plaintiffs seek to have the disallowed expenses either excluded or subtracted from their taxable income, while Defendant asks the court to uphold its adjustments. At a prior hearing, Defendant had stated it might challenge Plaintiffs' stated income and previously allowed expenses, but it did not develop such a challenge at trial.

Plaintiffs also seek a court order awarding them $2,000 for "consulting services" provided by Mr. Lessey at the initial audit meeting. (Ex 7.) Mr. Lessey alleges Defendant's auditor scheduled the meeting to review receipts, but instead asked questions about the marijuana industry and told Mr. Lessey he would review the receipts later. Mr. Swanson alleges Mr. Lessey "provided no services to the Oregon Department of Revenue." (Ex B at 3.)

## II. ANALYSIS

The principal issue in this case is the includability of the disputed expenses in Plaintiffs' taxable income. On their return, Plaintiffs excluded most of the expenses as part of the COGS, implicitly characterizing them as capital investments in inventory. Plaintiffs now claim the

Oregon subtraction for marijuana business expenses otherwise deductible but for section 280E of the Internal Revenue Code (IRC). Because Plaintiffs seek affirmative relief, they must bear the burden of proof on all factual questions. *See* ORS 305.427.[1]

Plaintiffs' additional claim for a consulting fee is outside the jurisdiction of this court because it neither affects nor is affected by Plaintiffs' tax liability. This court's jurisdiction lies over "all questions of law and fact arising under the tax laws of this state." ORS 305.410(1). To fall under that statute, a claim must have "some bearing on tax liability." *Sanok v. Grimes*, 294 Or 684, 701, 662 P2d 693 (1983). Any obligation of Defendant to pay Plaintiffs for services rendered would arise under the law of contracts or of torts, not under the tax laws.

A.      *Cost of Goods Sold in Marijuana Production*

Expenses within the COGS are *excluded* from gross income rather than *deducted* from it. *Max Sobel Wholesale Liquors v. Comm'r*, 630 F2d 670, 671–72 (9th Cir 1980). That occurs because gross receipts from sale of inventory are not income to the taxpayer until the cost of the inventory sold is recovered: "The 'cost of goods sold' concept embraces expenditures necessary to acquire, construct or extract a physical product which is to be sold; the seller can have no gain until he recovers the economic investment that he has made directly in the actual item sold." *Reading v. Comm'r*, 70 TC 730, 733 (1978), *aff'd* 614 F2d 159 (8th Cir 1980); *see* Treas Reg § 1.61–3(a) (defining gross income as "total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources"). Only expenses attributable to acquiring inventory can be part of the COGS.

///

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2015. The statute establishing the court's jurisdiction has not since been changed.

The distinction between excluding and deducting expenses is of special importance to marijuana businesses because they are forbidden from claiming deductions by IRC section 280E.[2] Nevertheless, IRC section 280E does not prevent them from excluding the inventory costs of controlled substances from gross income. *Patients Mut. Assistance Collective Corp. v. Comm'r*, 151 TC 176, 207–10 (2018) (*Patients Mutual*), *aff'd*, 995 F3d 671 (9th Cir 2021).

Federal tax law has two sets of rules for determining the inventory costs that constitute the COGS: sections 471 and 263A of the IRC. Because IRC section 263A does not apply to costs that "could not be taken into account in computing [federal] taxable income for any taxable year[,]" taxpayers barred from claiming deductions by IRC section 280E determine the COGS under IRC section 471. IRC § 263A(a)(2) (Dec 18, 2015); *Patients Mutual*, 151 TC at 209–10.

Taxpayers who produce their inventory instead of buying it include both direct and indirect costs "incident to and necessary for production" in their inventory accounting. Treas Reg § 1.471-11(b)(1). Direct production costs are "components of the cost of either direct material or direct labor"—*i.e.*, material either consumed or made an integral part of the product and labor associated with producing particular batches of product. Treas Reg § 1.471-11(b)(2). Indirect production costs are all other production costs besides direct production costs. Treas Reg § 1.471-11(b)(3)(i).

Further guidance on indirect production costs is found in nonexclusive lists of examples. *See* Treas Reg § 1.471-11(c). Expenses for repair, maintenance, utilities, and rent (among others) are generally inventory costs—"to the extent, and only to the extent, such costs are

---

[2] IRC section 280E states: "No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted."

incident to and necessary for production or manufacturing operations or processes." Treas Reg §§ 1.471-11(c)(2)(i); 1.471-11(c)(3)(i). Administrative expenses "incident to and necessary for production" are inventory costs if they are either (1) treated as such in a taxpayer's financial reports or (2) treated for tax purposes using an accounting method not comparable to the method used in the taxpayer's financial statements. Treas Reg §§ 1.471-11(c)(2)(iii); 1.471-11(c)(3). A general or administrative expense that is "incident to and necessary for the taxpayer's activities as a whole rather than to production or manufacturing operations or processes" is never included in inventory costs. Treas Reg §§ 1.471-11(c)(2)(ii)(l); 1.471-11(c)(3)(ii)(m).

Although Plaintiffs included most of the expenses at issue here within the COGS, the evidence does not show that any of them were "incident to and necessary for production[,]" except the air conditioning units. *See* Treas Reg § 1.471-11(b)(1). The meals with mentors were not incident to marijuana production; mentoring may have prepared Plaintiffs for their production work, but mentoring is not itself production work. Cellular telephone and internet service could conceivably be administrative expenses, but to claim them as indirect production costs Plaintiffs would need to show how those expenses were treated in the business's financial reports, which are not in evidence. *See* Treas Reg §§ 1.471-11(c)(2)(iii); 1.471-11(c)(3). Because the rented office was not a production facility, including it in inventory as an administrative expense would similarly require disclosure of financial reports.

As discussed below, the air conditioning units were capital improvements to the Farm building rather than production costs, and at trial Plaintiffs sought to have them treated as such. The car and truck expenses were never claimed within the COGS. Thus, none of the disputed expenses is part of the COGS.

/ / /

B.      *Marijuana Business Expense Subtraction*

IRC section 280E forbids business-expense deductions where the business is "trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted."  Because "marihuana" is listed as a hallucinogenic substance on schedule I of the Controlled Substances Act, marijuana business expenses may not be deducted on federal returns. *See* IRC § 280E; 21 CFR § 1308.11(d)(23).

The statute codified as ORS 316.680(1)(i) allows authorized marijuana businesses to reduce their Oregon taxable income by the amount of any federal deductions to which they would have been entitled but for IRC section 280E.  In 2016, Oregon's subtraction was allowed for:

> "Any federal deduction that the taxpayer would have been allowed for the production, processing or sale of marijuana items authorized under ORS 475B.010 to 475B.395 or 475B.400 to 475B.525 but for section 280E of the Internal Revenue Code."

2016 Or Laws ch 91, § 9 (effective June 2, 2016).[3]  The two groups of cross-referenced statutes regulate nonmedical marijuana and medical marijuana, respectively.  *See* ORS 475B.010 to 475B.395; 475B.400 to 475B.525.  Production of the former is authorized only for holders of production licenses issued by the Oregon Liquor Control Commission (OLCC).  ORS 475B.070(2).  Production of the latter requires registration with the Oregon Health Authority. ORS 475B.420(1)(b).

/ / /

---

[3] For a discussion of the genesis and amendment of the quoted text, see *Department of Revenue v. Wakefield*, TC 5404, 2022 WL 326339 at *4–*14 (Or Tax Reg Div Feb 3, 2022).  Because of additions and renumberings to ORS chapter 475B that occurred in 2017, the statute's cross-references were changed when it was subsequently codified.  *Cf.* ORS 316.680(1)(i)(2017).

Although IRC section 280E bars Plaintiffs from claiming business-expense deductions under IRC section 162(a), as growers registered with the Oregon Health Authority they may subtract amounts equivalent to such deductions from their federal taxable income. *See* 2016 Or Laws ch 91, § 9. Thus, the question is whether Plaintiffs would qualify for federal deductions if their business were not "trafficking in controlled substances." *See* IRC § 280E.

C. *Expenses*

The expenses at issue are for the air conditioning units, cellular telephone service, internet service, office rental, mentoring meals, and vehicle usage.

1. Air Conditioning Units

Plaintiffs installed two large air conditioning units as fixtures at the Farm in 2016 to remove excess heat generated by grow lights. The cost to install the units, with accompanying duct work, was $12,000. (Ex 1 at 2.) Neither the business purpose nor the amount of the expense is disputed.

In general, amounts paid "for permanent improvements or betterments made to increase the value of any property or estate" are capital expenditures that may not be deducted. IRC § 263(a)(1) (Dec 19, 2014). Instead, the cost of the improvements is charged to a capital account as basis. *See* IRC § 1012(a). Amounts that must be capitalized in that manner include the costs of "leasehold improvements, land and land improvements, buildings, machinery and equipment, and furniture and fixtures." Treas Reg § 1.263(a)–2(d)(1).

A depreciation deduction is available for the "exhaustion, wear and tear" of property in which capital is invested, and the property's basis is adjusted annually for similar reasons. IRC §§ 167(a); 1016(a)(2). While a taxpayer may or may not claim the depreciation deduction in a given year, the basis adjustment is mandatory. *See* Treas Reg § 1.1016–3(a). Where no

depreciation deduction has ever been claimed, basis adjustments follow the straight-line method of depreciation. Treas Reg § 1.1016–3(a)(2).

Purchasers of certain defined types of property may avoid capitalization and elect to instead treat the cost as a fully deductible expense in the year the property is placed into service—a tax treatment known as "expensing" that cost. IRC § 179(a) (Dec 18, 2015).[4] Importantly, the election to expense a cost under section 179 must be made on a federal income tax return. Treas Reg §§ 1.179–5(a);[5] 1.179–5(d).[6]

During the tax year at issue, expensing under IRC section 179 was not available for air conditioning fixtures. The expense deduction was for "section 1245 property" and for certain other narrowly defined property types not relevant here.[7] IRC § 179(d)(1) (Dec 18, 2015). Section 1245 property, in turn, consisted generally of personal property (plus additional narrowly defined property types not relevant here).[8] IRC § 1245(a)(3) (Dec 19, 2014). Because air

/ / /

/ / /

---

[4] "A taxpayer may elect to treat the cost of any section 179 property as an expense which is not chargeable to capital account. Any cost so treated shall be allowed as a deduction for the taxable year in which the section 179 property is placed in service." IRC § 179(a) (Dec 18, 2015).

[5] "* * * The election under section 179 and § 1.179–1 to claim a section 179 expense deduction for section 179 property shall be made on the taxpayer's first income tax return for the taxable year to which the election applies (whether or not the return is timely) or on an amended return filed within the time prescribed by law (including extensions) for filing the return for such taxable year. * * *." Treas Reg § 1.179–5(a).

[6] "Any election or revocation specified in this section must be made in the manner prescribed in paragraphs (a), (b), and (c) of this section. Thus, this election or revocation must not be made by the taxpayer in any other manner (for example, an election or a revocation of an election cannot be made through a request under section 446(e) to change the taxpayer's method of accounting), except as otherwise expressly provided by the Internal Revenue Code, the regulations under the Code, or other guidance published in the Internal Revenue Bulletin." Treas Reg § 1.179–5(d).

[7] *E.g.*, disaster assistance property, leasehold improvement property, restaurant property, and retail improvement property. IRC § 179(e), (f) (Dec 18, 2015).

[8] *E.g.*, research facilities, agricultural structures, pollution control facilities, petroleum storage facilities, and railroad gradings, as well as property used in several specific industries. IRC § 1245(a)(3) (Dec 19, 2014).

conditioning installed as a fixture (as opposed to a window box unit) is not personal property, it was not section 1245 property and was not eligible for section 179 expensing in 2016.[9]

An item capitalized for federal income tax purposes must also be capitalized for Oregon income tax purposes. *See* ORS 314.276(1). ORS 314.276(1) requires the same "method of accounting" for state tax purposes as for federal. "The term 'method of accounting' includes not only the overall method of accounting of the taxpayer but also the accounting treatment of any item." Treas Reg § 1.446-1(a)(1).

At trial, Plaintiffs requested an expense deduction for the air conditioners under IRC section 179. Because Plaintiffs' air conditioning units are fixtures rather than window boxes, they are not eligible for section 179 expensing. *See* IRC §§ 179(d)(1) (Dec 18, 2015); 1245(a)(3) (Dec 19, 2014). Even if they were eligible, the section 179 deduction would only be available if Plaintiffs had elected it on their federal return. *See* Treas Reg § 1.179–5(a). Plaintiffs did not do that, and the cost of the air conditioning fixtures is chargeable to capital account for both federal and Oregon tax purposes. *See* IRC § 263(a)(1) (Dec 19, 2014); ORS 314.276(1). The expense deduction under IRC section 179(a) is not available to Plaintiffs for the cost of the air conditioners.

Defendant has conceded a depreciation deduction of $476 for the air conditioning units based on straight-line depreciation, consistent with the basis adjustment for an item for which no depreciation deduction had been taken. *See* Treas Reg § 1.1016–3(a)(2). Plaintiffs did not challenge Defendant's calculation or argue for an alternative method of depreciation. Plaintiffs' claim for a deduction is allowed to the extent conceded by Defendant.

---

[9] Air conditioning was not categorically excluded from section 179 expensing during 2016; a prior prohibition had been removed by a 2015 amendment. *Compare* IRC § 179(d)(1) (Dec 19, 2014) *with* IRC § 179(d)(1) (Dec 18, 2015). After the year at issue, "[h]eating, ventilation, and air-conditioning" improvements to nonresidential real property were made eligible for IRC section 179 expensing. IRC § 179(f)(2)(B) (Dec 22, 2017).

2.     Cellular Telephone Service

Mr. Lessey subscribed to a family wireless service plan with AT&T that included five telephone lines. (Ex H at 126–34.) He testified that all five cellular telephones "lived at the Farm," where they were lined up on a power strip for use by visitors. According to Mr. Lessey, telephones were needed at the Farm in case of an emergency, such as a brush fire that occurred in 2015. In addition, Mr. Lessey testified the cellular telephones satisfied an OLCC licensing requirement—one to which Plaintiffs became subject in 2017—requiring marijuana workers to carry a "panic button." He testified Plaintiffs had a separate cellular plan with Verizon for their personal telephones, but that the Verizon telephones did not have coverage at the Farm.

Partial statements were provided for three months of AT&T service in 2016: January, February, and March. (Ex H at 126–134.) Those statements show hundreds of minutes used on four of the five lines and hundreds of text messages used on all five lines. (*Id*. at 128, 131, 134.) Several other AT&T statements submitted into evidence are dated in 2017. (*Id*. at 135–42.)

The evidence available does not establish that Plaintiffs' cellular telephone expenses would have qualified for a federal deduction. *See* 2016 Or Laws ch 91, § 9 (effective June 2, 2016). IRC section 162(a) establishes a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" Most of the claimed 2016 expenses are undocumented. The few 2016 statements provided show a regular pattern of voice calls and text messaging that does not fit with a business purpose of emergency use. The frequent text messaging, in particular, is difficult to reconcile with the testimony that the telephones did not belong to specific people, but were for the use of whoever visited the Farm. No subtraction is allowed for Plaintiffs' cellular telephone service expenses.

///

### 3. Internet Service

Plaintiffs claim a $1,175.28 subtraction for internet service expenses. The only documentation provided was pages 1 and 3 of a $97.94 Xfinity bill for internet service at their home address in March 2016. (Ex 6.) Mr. Lessey testified he had provided "original bills or copies" of all Plaintiffs' claimed internet expenses at the audit meeting, but that Defendant had failed to return the other documents.

While it is unfortunate that the documents were not returned and that Plaintiffs did not retain copies of them, it is not clear that those documents would establish the business purpose of Plaintiffs' home internet service. Nothing in evidence explains why internet service for the marijuana business was at Plaintiffs' home, rather than at the Farm or the rented office. The court does not doubt that Plaintiffs looked up information related to their business at home, but no records in evidence distinguish business from personal use. Plaintiffs have not shown the cost of home internet service was a business expense. *See* IRC § 162(a). No subtraction is allowed for internet service.

### 4. Office Rental

Mr. Lessey entered a "commercial lease agreement" with a landlord beginning July 1, 2016. (Ex 3 at 2–9.) According to the lease terms, Mr. Lessey was to pay a $200 damage deposit and $200 per month rent. (*Id*. at 4–5.) Canceled checks show Plaintiffs paid the landlord a total of $1,600: $400 at the end of June, and $200 at the end of each remaining month of 2016. (*Id*. at 10–16.)

Mr. Lessey testified that he rented the office to keep Plaintiffs' home address and the address of the Farm off the Secretary of State's website. He testified that a marijuana-growing business is at a high risk of being targeted by thieves and that the Secretary of State recommends

not using a home address in a marijuana business registration. He also testified that Mrs. Lessey visited the office daily to pick up the keys to the Farm, call suppliers, and do paperwork.

Given the commercial lease and Mr. Lessey's testimony, it is more likely than not that the office was rented to support Plaintiffs' marijuana-growing business. The court allows a $1,400 subtraction for the office rental. The remaining $200, for which a subtraction is not allowed, appears to have been a damage deposit rather than an expense. *Cf. McCabe v. Comm'r*, 49 TCM (CCH) 1336 n 29 (1985) (noting deduction allowed for temporary living expenses excluded amounts paid for cleaning fee, security damage deposit, and key deposit).

5. Meals with Mentors

Plaintiffs presented copies of receipts totaling $690.54 for food and drink from more than a dozen restaurants, breweries, and pubs. (Ex 5.) Mr. Lessey testified that the meals were expenses associated with mentoring on growing marijuana, made necessary by the lack of formal educational options in marijuana growing. According to Mr. Lessey, Plaintiffs knew a couple—Scott and Lori Albert—who owned a dispensary and offered "free consulting to several farms in 2016." (*Id*.) He testified that Mrs. Lessey typically met the Alberts at restaurants because of the danger of cross-contamination if they visited the Farm without showering and changing clothes.

Mr. Lessey testified that Plaintiffs' original receipts had contained contemporaneous handwritten notes on their backs, but that those notes were not visible in the copies. At trial, Plaintiffs introduced two original restaurant receipts dated March 15, 2016. (Ex 9.) One receipt was for $34; written on the back was "Scott & Lori / How to best monge [*sic*] / Flower room temp & times." (*Id*.) The other receipt was for $20.98; written on the back was "Scott & Lori / Set goals for today / Flower room temps / Veg room temps / Flower room times." (*Id*.)

Half the expenses incurred for business meals may be deducted, provided that every

element of the expenditure is substantiated "by adequate records or by sufficient evidence corroborating the taxpayer's own statement." IRC §§ 274(d); 274(n); 162(a). The records or corroborating evidence must show the cost, time, place, and business purpose of the meal, as well as the taxpayer's business relationship to the persons being entertained. IRC § 274(d).

In this case, Plaintiffs' original receipts for March 15, 2016, satisfy the substantiation requirements of IRC section 274(d). Because the notations on the other receipts are not in evidence, Mr. Lessey's testimony that the other meals had similar business purposes is uncorroborated and those receipts do not satisfy the requirements of IRC section 274(d). Plaintiffs are allowed a deduction of $27.49 for their meal expenses, an amount equal to 50 percent of the expenses shown on the two receipts from March 15, 2016.

6.      Vehicle Mileage

Plaintiffs reported 17,771 business miles on their 2016 return. (Ex C at 3.) Mr. Lessey testified that Mrs. Lessey typically drove to the Farm every day, and that when she was unavailable either he or their son went instead.

Two mileage logs are in evidence: a 12-page "original" log that Plaintiffs gave to Defendant during the audit (Ex D), and a 31-page "revised" log Mr. Lessey testified he had subsequently prepared with the aid of receipts and the internet-based mapping service MapQuest (Ex 4). Mr. Lessey testified that the original log was a word processing document created and updated by Mrs. Lessey with actual odometer readings throughout 2016. The revised log added additional stops and separate starting and ending mileage numbers for each leg of the trip. Both mileage logs contained columns for date, description, starting and ending odometer readings, and total mileage claimed. (*Id*.) Additionally, Plaintiffs conceded that mileage from their home to the first stop on a given day was a nondeductible commuting expense in the revised mileage log.

To illustrate, the following table compares the original and revised mileage logs' statements of the first week of January:

| Original Mileage Log | | | | |
|---|---|---|---|---|
| Date | Description | Start | End | Total |
| 1/01/16 | Farm | 115,381 | 115,438 | 57 |
| 1/02/16 | Farm | 115,440 | 115,497 | 57 |
| 1/03/16 | Farm, HD & Progressive | 115,497 | 115,666 | 169 |
| 1/04/16 | Farm | 115,668 | 115,725 | 57 |
| 1/05/16 | Farm & HD | 115,727 | 115,784 | 64 |
| 1/06/16 | Farm | 115,786 | 115,843 | 57 |
| 1/07/16 | Farm | 115,845 | 115,902 | 57 |
| Revised Mileage Log | | | | |
| Date | Description | Start | End | Total |
| 1/01/16 | Farm | 115,381 | 115,438 | Commute |
| 1/02/16 | Farm | 115,440 | 115,497 | commute |
| 1/03/16 | Home to HD | 115,497 | 115,503 | Commute |
| | HD to Farm to Progressive to Home | 115,503 | 115,666 | 163 |
| 1/04/16 | Farm | 115,668 | 115,725 | commute |
| 1/05/16 | Home to Ace | 115,727 | 115,729 | 62 |
| | Ace to HD to Home | 115,729 | 115,784 | |
| 1/06/16 | Home to Chevron | 115,786 | 115,788 | 55 |
| | Chevron to Farm to Home | 115,788 | 115,843 | |
| 1/07/16 | Home to Chevron | 115,845 | 115,847 | 55 |
| | Chevron to farm to home | 115,847 | 115,902 | |

(Exs D at 1; 4 at 1.)

Mr. Lessey testified that in the second half of the year, every trip to the Farm began with a stop at the leased office. Although the starting location is not reported on the original mileage log, the reported round trip mileage to the Farm was 57 miles from January to June and 56 miles from July to December. (Ex D at 1–12; Ex 4.)

Expenses for commuting between one's home and place of business are generally personal and nondeductible. Treas Reg § 1.262–1(b)(5); *Fausner v. Comm'r*, 413 US 838, 93 S Ct 2820, 37 L Ed 2d 996 (1973). However, automobile expenses for travel from one work location to another are deductible as business expenses. *See Heuer v. Comm'r*, 32 TC 947, 953 (1959), *aff'd*, 283 F.2d 865 (5th Cir 1960), and acq., IRS Announcement Relating to: Heuer (IRS ACQ Dec. 31, 1960).

Expenses for personal automobile use are deductible only if the mileage, date, and business purpose of each trip are substantiated by adequate records or other corroborating evidence. IRC § 274(d); Treas Reg § 1.274–5T(b)(6). Although a mileage log need not be "contemporaneous," it will be more credible if it is made "at or near the time of the expenditure or use" and is supported by documentary evidence. *See* Treas Reg § 1.274–5T(c)(1).

In the present case, Plaintiffs' mileage logs adequately record some of their automobile use. The original mileage log was made near the time of travel, and most of the revised mileage log's additional stops are supported by purchase receipts that Defendant accepted as evidence of Plaintiffs' COGS. In conjunction with actual beginning and ending odometer readings, the merchant receipts support the business purpose of some of the mileage claimed.

Some of the mileage recorded in the logs is not deductible. In particular, the last leg of each trip recorded in the revised log is typically from the Farm to Plaintiffs' home. Commuting from work is a nondeductible expense, just as commuting to work is. *See Fausner*, 413 US at 838 ("Congress has determined that all taxpayers shall bear the expense of commuting to and from work without receiving a deduction for that expense"). Given the 56-or-57-mile round trip distance to the Farm, 28 miles should be removed from Plaintiffs' claimed mileage for each instance where no business stop is recorded on the trip home from the Farm.[10] In addition, not all of the receipts were accepted by Defendant, and of those that were, not all had a legible date and address.[11] In such

---

[10] The revised log reports business stops either to the Farm or on the way home from the Farm on: January 3 and 5; February 3 and 23; March 28; April 4 and 28; June 8, 10, 11, 13, 16, and 28; July 11; and August 13 and 30. All of those stops are supported by receipts. For July 31, the log reports a stop at Chevron on the way home, but no receipt is provided. With only two exceptions (on April 15 and May 27), wherever the revised log reports any stop other than the Farm on a given date, it includes the last leg of the trip in the mileage claimed.

[11] Either the business purpose, the date, or the location of a stop resulting in claimed mileage beyond the round trip to the Farm is not established for certain merchant visits reported on: January 6, 9, 12, 14, and 31; March 16 and 25; April 4, 10, and 28; May 15; June 6–10, 14–16, 24, 28, and 30; September 29; October 10, 11, 18 and 26; and December 16. (*See* Exs 4 and D.) In a few cases, such as on June 6, 8, 10, 16, and 28, some of the trip legs claimed on a given date are supported and some are not.

instances, the business use of the vehicle on a reported leg of the trip is not adequately substantiated and an adjustment to the allowed miles must be made. *See* IRC § 274(d).

All told, the court finds that Plaintiffs' mileage logs and receipts substantiate business use of Plaintiffs' vehicles amounting to 7,742 miles.

## III. CONCLUSION

Between the evidence and Defendant's concessions, Plaintiffs are entitled to subtractions for the air conditioners' depreciation, office rent, meals, and vehicle use. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' 2016 taxable income be reduced by $476 for air conditioner depreciation, $1,400 for office rent, and $27.49 for meals; and that Plaintiffs be allowed a subtraction for car and truck expenses based on 7,742 business miles driven.

IT IS FURTHER DECIDED that Plaintiffs' claim for a consulting fee be dismissed for lack of jurisdiction.

IT IS FURTHER DECIDED that Plaintiffs' remaining claims be denied.

Dated this _____ day of November 2022.

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on November 29, 2022.*